Seth M. Lehrman (SBN 178303)
seth@epllc.com
**EDWARDS POTTINGER LLC**
425 North Andrews Avenue, Suite 2
Fort Lauderdale, FL 33301
Telephone : 954-524-2820
Facsimile: 954-524-2822

*Attorneys for Plaintiff*
*David Ulery*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| DAVID ULERY, individually and on behalf of all others similarly situated,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>STUDENT ASSIST PLUS, LLC,<br><br>　　　　　　Defendant. | **CASE NO.**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

　　　　Plaintiff, DAVID ULERY (hereinafter "Plaintiff"), brings this class action under Rule 23 of the Federal Rules of Civil Procedure against Defendant, STUDENT ASSIST PLUS, LLC ("Defendant") for its violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (hereinafter "the TCPA"), and the regulations promulgated thereunder. In support, Plaintiff alleges as follows:

**PRELIMINARY STATEMENT**

　　1.　　Plaintiff brings this Class Action Complaint for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions

1. of Defendant in negligently or willfully contacting Plaintiff on Plaintiff's cellular telephone, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), thereby invading Plaintiff's privacy.  Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

2. In the course of selling its services, Defendant and/or its agents placed thousands of calls using pre-recorded messages and/or an artificial voice to consumers' phones nationwide in violation of the TCPA.

3. Plaintiff and each Class Member received unwanted telephone robocalls from Defendant. Moreover, Plaintiff and Class members' phone numbers were registered with the National Do-Not-Call Registry.  This lawsuit challenges all calls that were sent by Defendant to Plaintiff and Class Members from approximately August 2017, through the date of filing this class action complaint.

4. "Month after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by the [FCC]."[1]   The TCPA is designed to protect consumer privacy by, among other things, prohibiting the making of autodialed or prerecorded-voice calls to cell phone numbers and failing to institute appropriate do-not-call procedures. 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(d).

5. The TCPA was designed to prevent calls like the ones described within this complaint, and to protect the privacy of citizens like Plaintiff. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 744 (2012).

---

[1]   *In re Rules & Regs. Implementing the TCPA*, 30 FCC Rcd. 7961, ¶ 1 (2015).

6. Additionally, the FCC has explicitly stated that the TCPA's prohibition on automatic telephone dialing systems "encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls." U.S.C.A. Const. Amend. 5; Telephone Consumer Protection Act of 1991, § 3(a), 47 U.S.C. § 227(b)(1)(A)(iii). *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165 (N.D. Cal. 2010).

7. In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer. TCPA, Pub.L. No. 102–243, § 11. Toward this end, Congress found that:

> [b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id.* at § 12; *see also Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at *4 (N.D. Ill. Aug. 10, 2012) (citing Congressional findings on TCPA's purpose).

8. In an action under the TCPA, a plaintiff must only show that the defendant, or someone on the defendant's behalf, "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

**JURISDICTION AND VENUE**

9. This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227.

10. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims in this case occurred in this District, including Defendant's transmission and marketing decisions regarding the unlawful and unwanted calls to Plaintiff which emanated from this District and their other operations in this District.

11. The Court has personal jurisdiction over Defendant because it conducts business in this state, maintains a principle place of business in this state, markets its services within this state, and has availed itself to the jurisdiction of this state by placing calls to Plaintiff and Class Members from this state and engaging in the unlawful telemarketing at issue in this state.

## PARTIES

12. Plaintiff's domicile is in Colorado Springs, Colorado.

13. Student Assist Plus, LLC is a California company located at 340 East First Street, #1145, Tustin, CA 92781.

14. Defendant, directly, individual, jointly, and/or in concert with, or through other persons, entities or agents acting on its behalf, created, approved, conspired to, agreed to, contributed to, authorized, assisted with, ratified, and/or otherwise caused all of the wrongful acts and omissions, including the dissemination of the unsolicited calls that are the subject matter of this Complaint.

## FACTUAL ALLEGATIONS

15. At all times relevant, Plaintiff, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).

16. Plaintiff registered his personal cell phone number ending in 7000 on the National Do-Not-Call Registry on or about February 6, 2008.

17. Defendant is a citizen of the State of California, and at all times mentioned herein were corporations and "persons," as defined by 47 U.S.C. § 153(39).

18. At all times relevant Defendant conducted business in the State of California, within this judicial district.

-4-

19. Defendant is a company that engages in the marketing and sales of loan services to consumers across the country.

20. To increase the sales volume and profits of its student loan consolidation and refinance services, Defendant and/or its authorized sales agents repeatedly called thousands of consumers using a pre-recorded message in violation of the TCPA.

21. Defendant utilizes prerecorded telemarketing calls to market and advertise Defendant's business, including at least two (2) calls to Plaintiff on July 15, 2021.

22. Both calls came from spoofed numbers from Plaintiff's local area, but the pre-recorded message with an artificial female voice from "Marissa Martin" directed Plaintiff to call Defendant back at its 949-593-3066 telephone number with approval code 213005 advertising its student loan forgiveness services.

23. Plaintiff knows the calls utilized a pre-recorded message or artificial voice because of the sound of the robot's artificial voice, and the content and sound of the message was always the same.

24. Defendant and/or their authorized sales agents concealed or "spoofed" their actual phone number from Plaintiff and Class Members to trick Plaintiffs and Class Members into answering calls from a local familiar number.

25. Plaintiff eventually called back the 949-593-3066 number to inquire about the identity of the caller.

26. Plaintiff spoke with a representative who identified himself as Matthew with agent ID number 206 from Student "Services" Plus. Upon further inquiry about the company, the representative directed Plaintiff to search "BBB" to learn more about the company.

27. Upon investigation of Plaintiff and counsel, the true identity of Student "Services" Plus is Student Assist Plus, which is located in Tustin, CA with a 949 area code.

28.  All publicly available information, including the BBB (Better Business Bureau) profile for Student "Services" Plus, indicates that Student Assist Plus is a student loan consolidation/refinance company that called Plaintiff.

29.  The calls were transmitted to Plaintiff's personal cell phone number ending in 7000, and within the time period that is relevant to this action.

30.  At no time did Plaintiff provide Plaintiff's cellular number to Defendant for the purpose of receiving telemarketing calls, nor did Plaintiff consent to receive such calls in any respect.

31.  Plaintiff is the subscriber and a user of the 7000 Number and is financially responsible for phone service to the 7000 Number, including the cellular costs and data usage incurred as a result of the unlawful calls made to Plaintiff by Defendant.

32.  Through the unsolicited telemarketing calls, Defendant contacted Plaintiff on Plaintiff's personal telephone regarding an unsolicited service using "artificial or pre-recorded voice," as defined and prohibited by 47 U.S.C. § 227(b)(1)(A).

33.  The content of the calls made to Plaintiff and the Class Members show that they were for the purpose of marketing, advertising, and promoting Defendant's business and services to Plaintiff as part of an overall telemarketing strategy.

34.  Defendants placed the calls to Plaintiff and Class Members regardless of whether these individuals had provided express written consent or had registered their phone numbers on the National Do Not Call Registry.

35.  These calls were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

36.  Plaintiff did not provide Defendant or its agents prior express consent to receive these messages to his telephone; therefore, the unsolicited messages violated 47 U.S.C. § 227(b)(1).

37.  Defendant is and was aware that they are transmitting unsolicited telemarketing calls to Plaintiff and other consumers without their prior express consent.

38. Other consumers have publicly complained about receiving the same automated SPAM pre-recorded from Defendant, directing them to call Defendant's telephone number for loan forgiveness services. *See* https://800notes.com/Phone.aspx/1-949-593-3066 (last visited August 11, 2021) (various consumers complaining about receiving spoofed pre-recorded calls directing them to call Defendant with the same artificial voice that called Plaintiff, "Hi this is Marissa Martin I'm following up regarding your eligibility for loan forgiveness . . . ." "Same call with same message, phone number, and approval code. Definitely a scam!").

39. Plaintiff was damaged by Defendant's calls. In addition to using Plaintiff's residential cellular data, phone storage, and battery life, his privacy was wrongfully invaded, his seclusion was intruded upon, and Plaintiff has become understandably aggravated with having to deal with the frustration of repeated, unwanted calls and messages, forcing him to divert attention away from his work and other activities. Not only did the receipt of the text messages distract Plaintiff away from his personal activities, Plaintiff was forced to spend time investigating the calls.

40. To investigate the company responsible for the unwanted, illegal and unauthorized calls to Plaintiff's phone, Plaintiff spoke with the Defendant's representative and conducted other research. But for Plaintiff's efforts, Defendant's identity would continue to be concealed. Plaintiff ultimately did not qualify for the Defendant's services.

41. Plaintiff had no relationship with Defendant prior to these illegal phone calls.

**LIABILITY FOR CALLS PLACED BY THIRD PARTIES**

42. To the extent Defendant outsourced its illegal robocalling, it is still liable for calls that violate the TCPA.

-7-

43. On May 9, 2013, the FCC determined that this was not a basis for avoiding liability within a Declaratory Ruling that held that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶37) (internal citations omitted).

44. Moreover, the May 2013 FCC Ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. Id. at 6587 n. 107.

45. The May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships… through discovery, if they are not independently privy to such information." Id. at 6592-593 (¶46). Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." Id. at 6593 (¶46).

46. Even if Defendant did not personally place the TCPA-violating calls, Defendant is still liable for the telemarketers' actions if they took steps to cause or

approve the calls to be made, or if the calls were made pursuant to the Defendant's actual authority, apparent authority and/or ratification of the calls, and because they were acting as a joint enterprise or in concert with each other.

47. Defendant authorized its telemarketers and/or employees to generate prospective customers. Defendant utilized a systematic telemarketing campaign whereby robocalls were placed in a seamless process to make it appear to Plaintiff and Class Members that Defendant was calling them directly.

48. Defendant hired, permitted, and enjoyed the benefits of the mass robocalling.

49. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." See In re Rules & Regulations Implementing the TCPA, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (13) (1995).

50. The FCC stated within their January 4, 2008 ruling, that a company on whose behalf a telephone call is made bears the ultimate responsibility for any violations.

51. The May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (34).

52. Defendant requested and sought from its telemarketers to solicit particular target customer profiles on a mass scale.

53. Defendant specified the criteria of potential customers that would be most profitable for Defendant to sell to after they had been robocalled.

54. Defendant integrated its systems with its marketers so it could access the records of people who were called.

55. On information and belief, Defendant had access to the sales and customers generated by the illegal robocalling at issue in this case.

56. The May 2013 FCC Ruling also clarifies circumstances under which a telemarketer has apparent authority.

57. Defendant authorized its marketers to generate prospective customers for it.

58. Plaintiff reasonably believed that telemarketer who called him had received permission and instructions to conduct activity on behalf of Defendant.

59. Further, Defendant ratified the unlawful calls by knowingly accepting business that originated through illegal robocalls.

60. Despite being on notice of frequent violations, Defendant continues to work with companies that perform illegal robocalling.

61. By accepting these contacts and relying on them to generate leads and contacts, Defendant "manifest[ed] assent or otherwise consent[ed]… to act" on behalf of its telemarketers, as described in the Restatement (Third) of Agency.

62. Defendant further ratified the TCPA violations by knowingly accepting the benefit of large volume of sales, despite that these sales were generated illegally.

63. Defendant took advantage of the violations by having their salespeople solicit the prospective customers while turning a blind eye to the way the potential customer was identified.

## CLASS ACTION ALLEGATIONS

64. Plaintiff brings this class action under Rule 23(a),(b)(2), and(b)(3) of the Federal Rules of Civil Procedure on behalf of himself and of a similarly situated "Class" or "Class Members" defined as:

> **No Consent Class:** All persons in the United States who, within the four (4) years prior to the filing of this Complaint received a call containing a pre-recorded message or artificial voice from Defendant or anyone on Defendant's behalf, to said person's personal telephone

number, advertising Defendant's services, without the recipients' prior express written consent in violation of the TCPA.

**Do Not Call Registry Class:** All people in the United States who from four years prior to the filing of this action (1) were called by or on behalf of Defendant; (2) more than one time within any 12-month period; (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of selling Defendants' products and services; and (5) for whom Defendants claim (a) it did not obtain prior express written consent, or (b) it obtained prior express written consent in the same manner as Defendant claims it supposedly obtained prior express written consent to call the Plaintiff.

65. Excluded from the Class is Defendant, and any subsidiary or affiliate of Defendant, and the directors, officers and employees of Defendant or their subsidiaries or affiliates, and members of the federal judiciary.

66. This action has been brought and may properly be maintained as a class action against Defendants pursuant to Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable. Plaintiff reserves the right to amend the Class definition if discovery and further investigation reveal that any Class should be expanded or otherwise modified.

67. **Numerosity**: At this time, Plaintiff does not know the exact number of Class Members, but among other things, given the nature of the claims and that Defendant's conduct consisted of standardized campaign calls placed to cellular telephone numbers, Plaintiff believes, at a minimum, there are greater than forty (40) Class Members. Plaintiff believes that the Class is so numerous that joinder of all members of the Class is impracticable and the disposition of their claims in a class action rather than incremental individual actions will benefit the Parties and the Court by eliminating the possibility of inconsistent or varying adjudications of individual actions.

68. Upon information and belief, a more precise Class size and the identities of the individual members thereof are ascertainable through Defendant's records, including, but not limited to Defendant's calls and marketing records.

69. Members of the Class may additionally or alternatively be notified of the pendency of this action by techniques and forms commonly used in class actions, such as by published notice, e-mail notice, website notice, fax notice, first class mail, or combinations thereof, or by other methods suitable to this class and deemed necessary and/or appropriate by the Court.

70. **Existence and Predominance of Common Questions of Fact and Law**: There is a well-defined community of common questions of fact and law affecting the Plaintiff and members of the Class. Common questions of law and/or fact exist as to all members of the Class and predominate over the questions affecting individual Class members. These common legal and/or factual questions include, but are not limited to, the following:

    a. Whether Plaintiff and Class Members registered a phone number on the National Do Not Call Registry;

    b. Whether, within the four years prior to the filing of this Complaint, Defendant or their agents called (other than a message made for emergency purposes or made with the prior express consent of the called party) to a Class member using a pre-recorded message or artificial voice to any telephone number assigned to a cellular phone service;

    c. How Defendant obtained the numbers of Plaintiff and Class members;

    d. Whether Defendants called Plaintiff and Class Members using prerecorded messages or artificial voice;

    e. Whether Defendant engaged in telemarketing when they initiated the calls which are the subject of this lawsuit;

  f. Whether the calls made to Plaintiff and Class Members violate the TCPA and its regulations;

  g. Whether Defendant willfully or knowingly violated the TCPA or the rules prescribed under it;

  h. Whether Plaintiff and the members of the Class are entitled to statutory damages, treble damages, and attorney fees and costs for Defendant's acts and conduct;

  i. Whether Plaintiff and members of the Class are entitled to a permanent injunction enjoining Defendant from continuing to engage in its unlawful conduct; and

  j. Whether Plaintiff and the Class are entitled to any other relief.

71. One or more questions or issues of law and/or fact regarding Defendant's liability are common to all Class Members and predominate over any individual issues that may exist and may serve as a basis for class certification under Rule 23(c)(4).

72. **Typicality**: Plaintiff's claims are typical of the claims of the members of the Class. The claims of the Plaintiff and members of the Class are based on the same legal theories and arise from the same course of conduct that violates the TCPA.

73. Plaintiff and members of the Class each received at least one telephone call, advertising the Defendants' products or services, which Defendant placed or caused to be placed to Plaintiff and the members of the Class.

74. **Adequacy of Representation:** Plaintiff is an adequate representative of the Class because Plaintiff's interests do not conflict with the interests of the members of the Class. Plaintiff will fairly, adequately and vigorously represent and protect the interests of the members of the Class and has no interests antagonistic to the members of the Class. Plaintiff has retained counsel competent and experienced in litigation in the federal courts, TCPA litigation, and class action litigation.

75. **Superiority**: A class action is superior to other available means for the fair and efficient adjudication of the claims of the Class. While the aggregate damages which may be awarded to the members of the Class are likely to be substantial, the damages suffered by individual members of the Class are relatively small. As a result, the expense and burden of individual litigation makes it economically infeasible and procedurally impracticable for each member of the Class to individually seek redress for the wrongs done to them. Plaintiff does not know of any other litigation concerning this controversy already commenced against Defendant by any member of the Class. The likelihood of the individual members of the Class prosecuting separate claims is remote. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would increase the delay and expense to all parties and the court system resulting from multiple trials of the same factual issues. In contrast, the conduct of this matter as a class action presents fewer management difficulties, conserves the resources of the parties and the court system, and would protect the rights of each member of the Class. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

76. **Class-Wide Injunctive Relief and Rule 23(b)(2):** Moreover, as an alternative to or in addition to certification of the Class under Rule 23(b)(3), class certification is warranted under Rule 23(b)(2) because Defendant has acted on grounds generally applicable to Plaintiff and members of Class, thereby making appropriate final injunctive relief with respect to Plaintiff and Class Members as a whole.  Plaintiff seeks injunctive relief on behalf of Class Members on grounds generally applicable to the entire Class in order to enjoin and prevent Defendant's ongoing violations of the TCPA, and to order Defendant to provide notice to them of their rights under the TCPA to statutory damages and to be free from unwanted calls.

# COUNT I
## VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT
## 47 U.S.C. § 227(b)
**(Against Student Assist Plus LLC on Behalf of Plaintiff and the No Consent Class)**

77. Plaintiff incorporates by reference all of the allegations contained in all of the above paragraphs 1 through 76 of this Complaint as though fully stated herein.

78. It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using . . . an artificial or pre-recorded voice. . .to any telephone number assigned to a . . . cellular telephone service . . ." 47 U.S.C. § 227(b)(1)(A)(iii).

79. Defendant, or third parties directed by Defendant – caused to make non-emergency telephone calls to the cellular telephones of Plaintiff and the other members of the Class defined above using artificial or pre-recorded voice

80. These calls were made without regard to whether Defendant had first obtained express permission from the called party to make such calls. In fact, Defendant did not have prior express consent to call the cellular phones of Plaintiff and the other members of the putative Class when its calls were made.

81. It is a violation of the TCPA "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior consent of the called party, unless the call is initiated for emergency purposes. . . ." 47 U.S.C. 227(b)(1)(B).

82. Defendant, or third parties directed by Defendant – used an artificial or prerecorded voice to deliver messages to Plaintiff and other Class Members without prior consent.

83. Defendant, therefore, violated Sec. 227(b)(2) of the TCPA by initiating telephone calls while using an artificial or prerecorded voice to deliver non-emergency telephone calls to the cellular phones of Plaintiff and the other members of the putative Class without their prior express written consent.

84. The foregoing acts and omissions of Defendant constitutes numerous and multiple violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 et seq.

85. As a result of Defendant's negligent violations of 47 U.S.C. § 227 et seq., Plaintiff and the Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

86. At all relevant times, Defendant knew or should have known that its conduct as alleged herein violated the TCPA.

87. Defendant knew that it did not have prior express consent to make these calls, and knew or should have known that its conduct was a violation of the TCPA.

88. Since Defendant knew or should have known that Plaintiff and Class Members did not give prior express consent to receive calls using artificial or prerecorded voice, the Court should treble the amount of statutory damages available to Plaintiff and members of the Putative Class pursuant to section 227(b)(3) of the TCPA

89. As a result of Defendant knowing and/or willful violations of 47 U.S.C. § 227(b), Plaintiff and the Class are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(C).

90. Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class members relief against Defendant, as set forth in the Prayer for Relief below.

**COUNT II**
**VIOLATION OF THE TCPA**
**47 U.S.C. § 227**
**(Against Student Assist Plus LLC on Behalf of Plaintiff and the Do Not Call Registry Class)**

91. Plaintiff incorporates by reference all of the allegations contained in paragraphs 1 through 76 of this Complaint as though fully stated herein.

-16-

92. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

93. 47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."[2]

94. 47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

95. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

96. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

---

[2]. *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) Available at https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf

97. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above.

98. As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

99. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class relief against Defendant, as set forth in the Prayer for Relief below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and in favor of the class, against Defendant for:

   a. An order certifying this case as a class action, certifying Plaintiff as representative of the Class, and designating Plaintiff's counsel as Class counsel;
   b. Statutory damages of $500 per call in violation of the TCPA;
   c. Willful damages at $1,500 per call in violation of the TCPA;
   d. A declaration that Defendant's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(A)(iii);
   e. An injunction prohibiting Defendant from using prerecorded messages and/or artificial voice to call numbers assigned to cellular telephones without the prior express written consent of the called party;
   f. An injunction prohibiting Defendant from calling any individual whose number appears on the National Do Not Call Registry;

    g. Reasonable attorney's fees and costs; and

    h. Such further and other relief as this Court deems reasonable and just.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury.

DATED:  August 20, 2021     EDWARDS POTTINGER LLC

                                   By: */s/ Seth M. Lehrman*
                                         Seth M. Lehrman
                                         Attorneys for Plaintiff
                                         David Ulery